IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Korell Battle a/k/a Korell Robert Floyd Battle, ) <br> ) <br> Plaintiff, ) <br> ) <br> v.  ) <br> ) <br> Robert Babb and George Amonitti, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.2:13-cv-00951-RMG-BHH <br><br> **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.  This matter is before the Court upon Defendants' Motion for Summary Judgement (Dkt. No. 23).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

Plaintiff filed the instant Complaint on April 1, 2013, against three defendants: Robert Babb, George Amonitti, and the South Carolina Department of Corrections ("SCDC"). (Dkt. No. 1.) SCDC was dismissed without service of process; the action proceeded against the individual defendants. (See Dkt. No. 15.)

On July 5, 2013, Defendants filed a Motion for Summary Judgment. (Dkt. No. 23.) By order filed July 8, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 24.) Plaintiff filed a Response in Opposition on or about August 11, 2013. (Dkt. No. 36.)

## PROCEDURAL FACTS

As noted above, Plaintiff filed the instant action on April 1, 2013; he complains therein of the "denial of medical care in violation of the Eighth Amendment to the United

States Constitution." (Dkt. No. 1 at 1 of 6.)[1] Specifically, Plaintiff alleges that in January of 2011, while at Lieber Correctional Institution, he "began to feel bumps around [his] upper buttock area." (Dkt. No. 1 at 3 of 6.) He alleges that on January 7, 2011, Defendant Dr. Babb saw him, and Plaintiff asked "to see [an] outside dermatologist skin doctor." (Id.) According to Plaintiff, Babb told him that SCDC would not pay for Plaintiff to see a dermatologist because it cost too much money but "if [Plaintiff] wanted to see 1 then [Plaintiff] could pay for [an] outside dermatologist" himself. (Id.) Plaintiff further alleges that Dr. Babb told Plaintiff the "area look[ed] like a contagious skin disease called impetigo." (Id.) Plaintiff alleges that he asked Babb for alcohol pads or peroxide to clean the area, as well as penicillin "to possibly kill [a] stomach infection," but Babb denied these requests. (Id.)

Plaintiff alleges that he saw Defendant Dr. Amonitti several times in the first half of 2011. (See Dkt. No. 1 at 3 of 6.) According to Plaintiff, Amonitti prescribed dermasmooth in January of 2011, neosporin and antibiotics in March of 2011, and a shampoo called Lotrin in May of 2011. (Id. at 3-4 of 6.)

Plaintiff states that he was transferred to Perry Correctional Institution ("PCI") in February of 2012. (Id. at 4 of 6.) It does not appear that Babb or Amonitti had any involvement with Plaintiff or Plaintiff's treatment after Plaintiff was transferred to PCI. Plaintiff alleges that in June of 2012, he tested positive for h-pylori, which is "some type of stomach infection." (Dkt. No. 1 at 3 of 6.) Plaintiff contends he has still not seen a dermatologist. (Id.)

Plaintiff lists three causes of action. (See Dkt. No. 1 at 5 of 6.) The purported first cause of action is against Babb and Amonitti for "failing to provide access to [a]

---

[1]Plaintiff's Complaint also states that he seeks to bring a medical malpractice action against SCDC. (See Dkt. No. 1.) As noted above, however, SCDC is no longer a defendant in the instant action. (See Dkt. No. 15.)

2

dermatologist specialist" to care for Plaintiff's condition. (Dkt. No. 1 at 5 of 6.) The second and third causes of action, which are for medical malpractice, purport to be against SCDC only, though SCDC has since been dismissed. (Id.; see also Dkt. No. 15.) Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. (See Dkt. No. 1 at 5-6 of 6.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

Defendants contend they are entitled to summary judgment for several reasons; the undersigned addresses Plaintiff's claim below.

As Defendant SCDC has been dismissed, only one claim remains: a claim of deliberate indifference. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle,

429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Furthermore, the doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").[2] Instead, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

A review of the record reveals that Defendants Babb and Amonitti are entitled to summary judgment. Dr. Babb left SCDC's employment on August 31, 2011; Dr. Amonitti

---

[2] "[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). However, supervisory liability is not at issue in the case *sub judice*.

last saw Plaintiff on May 27, 2011. (Babb Aff. at 2 of 3; Amonitti Aff. at 3 of 21.) Furthermore, Plaintiff was transferred to Perry Correctional Institution (in Pelzer, South Carolina) in early 2012; at all relevant times, Dr. Amonitti provided care at SCDC facilities in Summerville and Ridgeland. (Amonitti Aff. at 2-3 of 21.)

Dr. Babb states in his Affidavit, "The medical records of the plaintiff reveal that my only involvement in the plaintiff's medical care during the period relevant to the Complaint occurred on January 7, 2011, March 4, 2011, and July 29, 2011 . . . ." (Babb Aff. at 1 of 3.) According to Dr. Babb, Plaintiff was seen by a nurse at sick call on January 7, 2011, "whereupon he requested an 'outside dermatologist.'" (Id.) Babb states that the nurse consulted him, and he told the nurse "that the plaintiff would need to see a doctor within the prison, who could then decide if a dermatology consultation was needed." (Id. at 2 of 3.) Babb further states,

> An appointment was scheduled for Mr. Babb to see a doctor. SCDC policy is to allow inmates an outside physician of their choice only when the inmate pays for those services. Otherwise, specialist consultations are scheduled, if needed, with specialists employed or contracted by SCDC. The medical record makes no mention of a request by Mr. Battle for alcohol or peroxide on the dates he alleges, but does mention that request on March 4, 2011. Nonetheless, the request was not made to me, and I have no personal knowledge of that.

(Id.)

Dr. Babb notes that although Plaintiff alleges he saw a doctor on March 4, 2011, the medical records indicate he saw a nurse at sick call, and the nurse relayed information to Dr. Babb. (Id.) Dr. Babb states that he "ordered a triple antibidic ointment and directed that an appointment should be made for Mr. Battle with a Lieber physician if he had a number of furuncle, or boils" because "that condition would necessitate an oral or injected antibiotic." (Id.) Babb indicates that because no appointment was scheduled, he "must assume Mr. Battle did not have a number of furuncles." (Id.) According to Dr. Babb,

5

although the medical records reveal that Plaintiff complained to the nurse his "concern that this rash could be related to stomach or internal problems," no complaints related to Plaintiff's stomach was relayed to Babb. (Id.) In addition, Babb states that the only complaint Plaintiff made regarding his stomach–at least until April 19, 2011–was related to constipation. (Id.)

Finally, Babb states that on July 29, 2011, during the noon pill pass, Plaintiff asked a nurse "that his prescription be renewed for vegetable powder, a laxative." (Id.) According to Dr. Babb, the nurse relayed that request to him, and Dr. Babb "approved it and signed off." (Id.)

According to Dr. Amonitti, the medical records attached to his Affidavit "reveal that [Amonitti's] involvement in the plaintiff's medical care during the period relevant to the Complaint occurred on January 11, 2011; January 14, 2011; March 11, 2011; April 19, 2011; May 6, 2011; May 20, 2011; and May 27, 2011 . . . ." (Amonitti Aff. at 2 of 21.) The records for Dr. Amonitti's encounters with the Plaintiff in January of 2011 do not appear related to Plaintiff's complaints about bumps around his buttock area or stomach infection. In January or 2011, Dr. Amonitti renewed Plaintiff's blood pressure medicine and his natural fiber laxative; he also ordered a steroid cream for the dry patches on Plaintiff's face. (Id.) Amonitti describes his March 2011 encounter with Plaintiff as follows:

> On March 11, 2011, Mr. Battle was complaining of ulcerated papules in the fold of his buttocks, and said he was using neosporin with some positive effect. He stated the papules were pruritic, or itchy. They had the classic appearance of impetigo, a skin infection. I instructed Mr. Battle on precautions such as hand washing after touching the area, and washing his underwear and towels after contact, and prescribed him an oral antibiotic (cephalexin) and triple antibiotic ointment.

(Id.)

6

Dr. Amonitti states in his Affidavit that Plaintiff reported to sick call on April 19, 2011 "with a complaint about the bumps around his buttocks"; he saw a nurse, who requested a doctor's appointment for Plaintiff. (Id.) Amonitti indicates that he approved the nurse's request but did not see Plaintiff on that date. (Id. at 2-3 of 21.) Amonitti explains in his Affidavit that he saw Plaintiff again on May 6, 2011, upon a complaint of abdominal pain, but Plaintiff's "examination was normal in that respect." (Id. at 3.) Dr. Amonitti did order "routine bloodwork" on May 6, 2011, and reviewed the results of that report on May 20, 2011. (Id.) Amonitti states that on May 20, 2011, he "requested that the staff give Mr. Battle an Order to Report for the next week, to discuss his hyperlipidemia and to discuss a possible prescription for statin drugs for his cholesterol level." (Id.)

When Dr. Amonitti saw Plaintiff on May 27, 2011, Plaintiff again complained "of the rash in his buttocks fold." (Id.) Amonitti further describes that May 27, 2011, encounter as follows:

> [The rash] then appeared to be fungal, and I prescribed an antifungal cream (Lotrimin). Additionally, I prescribed Zocor for his cholesterol. Mr. Battle wanted to see a dermatologist, but I did not believe that was necessary. South Carolina Department of Corrections policy is to allow inmates an outside physician of their choice only when the inmate pays for those services. Otherwise, specialist consultations are scheduled, if needed, with specialists employed or contracted by SCDC.

(Id.) Amonitti states that he "was never again involved in Mr. Battle's medical care," and the records "show that [Plaintiff] did not complain again regarding his skin until October 1, 2011, when he appeared in sick call." (Id.)

Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim. Plaintiff presented with the bumps in the fold of his buttocks, and Defendants provided treatment. When Plaintiff asked to see an "outside dermatologist" in January of 2011, Babb indicated that Plaintiff would have to see a doctor within the prison, and that

7

doctor would determine whether a dermatology consultation was needed; Babb states that an appointment with the doctor was scheduled. (Babb Aff. at 2 of 3.) Plaintiff saw Dr. Amonitti a few days later. Although Dr. Amonitti's Affidavit does not mention any complaint of a rash before March of 2011, Plaintiff asserts in his Response in Opposition that he requested alcohol pads and peroxide in January of 2011, and that he spoke to Amonitti about his rash on January 11, 2011. (Dkt. No. 36-2 at 9 of 22.) Of course, Plaintiff himself contends the alcohol pads and peroxide were denied because of "SMU security reasons." (Id.) And the medical record for January 7, 2011, states,

> I/M HAS SIGNED UP FOR SICK CALL AGAIN AFTER BEING SEEN 2 DAYS AGO WITH NO COMPLAINTS OF RASH AT THAT TIME. HAS C/O RASH BEFORE WITH NONE SEEN BY STAFF VERY ANGRY AND AGGRESSIVE WHEN V/ SIGNS TRIED TO BE TAKEN FOR SICK CALL. ADVISED THAT A NOTE WILL BE SENT TO MD.

(Dkt. No. 23-2.)

Plaintiff was seen on January 14, 2011, and Dr. Amonitti prescribed a steroid cream for the Plaintiff. (Amonitti Aff. at 2 of 21.) When Plaintiff was seen at sick call on March 4, 2011, complaining of bumps around his buttocks, Dr. Babb ordered triple antibiotic ointment and instructed that, if Plaintiff had multiple boils, Plaintiff should see the doctor. (See Babb Aff. at 2 of 3; see also Dkt. No. 23-2 at 19 of 21.) Plaintiff saw Dr. Amonitti on March 11, 2011, and Amonitti prescribed an oral antibiotic and triple antibiotic ointment. (Amonitti Aff. at 2 of 21.) In April of 2011, when Plaintiff reported back to sick call regarding the bumps, Amonitti signed off on the nurse's request to allow a doctor's appointment. (Id. at 2-3 of 21.) And when Amonitti saw Plaintiff again on May 27, 2011, Amonitti prescribed an antifungal cream to treat what Amonitti stated he then believed to be a fungal infection. (Id. at 3.) Neither Babb nor Amonitti saw Plaintiff again after May 27, 2011, and the records do not

show another complaint about the rash until October of 2011. (See Dkt. No. 23-2 at 15 of 21; see also Babb Aff.; Amonitti Aff.)

On this evidence, no reasonable jury could conclude that either Dr. Babb or Dr. Amonitti were deliberately indifferent to Plaintiff's serious medical needs. Each time Plaintiff presented with a problem, the physicians treated it. Although Plaintiff contends he spoke to Dr. Amonitti about a rash in January of 2011, when he presented with a rash, he was prescribed antibiotic and antifungal creams, as well as an oral antibiotic. Plaintiff continuously asserts that Defendants were deliberately indifferent because Plaintiff was not allowed to see a dermatologist. (See Dkt. No. 36.) Although Plaintiff wished to see a dermatologist, the fact that Plaintiff was not allowed to see a specialist does not–on the facts in the instant record–support a finding of deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) ("Although an inmate certainly has a right to necessary medical treatment, he does not have a right to demand that the opinion of his pre-imprisonment doctor be permitted to override the reasonable professional judgment of the prison's medical team."); see also Light v. Anderson, No. 2:06-2322-TLW-RSC, 2007 WL 2791170, at *4 (D.S.C. Sept. 24, 2007) ("While the treatment was apparently not as prompt as the plaintiff wished, the cause of the rash was not consistently diagnosed, and plaintiff was not sent to a medical specialist outside the GCDC for his rash as he wanted, that simply does not constitute deliberate indifference to a serious medical need.").

In addition, when Plaintiff presented with complaints about his stomach, his stomach was examined, and no abnormalities found. Plaintiff asserts in his Response in Opposition that Babb and Amonitti "misdiagnosed" Plaintiff's stomach condition. (See Dkt. No. 36 at

2 of 3.) However, an incorrect diagnosis does not constitute deliberate indifference. See Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977) ("Even if the doctor were negligent in examining [the plaintiff] and in making an incorrect diagnosis, his failure to exercise sound professional judgment would not constitute deliberate indifference to serious medical needs."); see also Daniels v. Williams, 474 U.S. 327, 328 (1986) (negligence is not actionable under § 1983); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct. . . . "). On the record before this Court, no reasonable jury could find that either Defendant Babb or Defendant Amonitti was deliberately indifferent to Plaintiff's serious medical needs; the undersigned therefore recommends granting Defendants' Motion for Summary Judgment.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 23) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

December 5, 2013
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).